UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARGARITA M. ZAPATA-DAVIS,

        Plaintiff,

vs.                                 Case No.  3:04-cv-642-J-MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

      This cause is before the Court on Plaintiff's appeal of an administrative decision

denying her application for Social Security benefits.  The Court has reviewed the record,

the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

      Plaintiff filed an application for disability insurance benefits ("DIB") on

April 29, 2002 and for supplemental security income ("SSI") on April 15, 2002, alleging

an inability to work since April 15, 2002.  (Tr. 51-53)  The Social Security Administration

("SSA") denied this application initially and on reconsideration. (Tr. 30-31, 33-34).

Plaintiff then requested and received a hearing before an Administrative Law Judge (the

"ALJ") on January 13, 2004.  (Tr. 243-270).  On March 15, 2004, the ALJ issued a

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.
(Doc. 9).

decision finding Plaintiff was not disabled.  (Tr. 15-23).  Plaintiff filed a Request for

Review by the Appeals Council (Tr. 11) and presented additional medical records to the

Appeals Council.  The Appeals Council considered the new evidence, made the

additional documents part of record and denied Plaintiff's request for review on June 3,

2004 (Tr. 5-8), thereby making the ALJ's decision the final decision of the

Commissioner.  Plaintiff timely filed her Complaint in the U.S. District Court on August 2,

2004.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since April 15, 2002, due to lupus and an affective

disorder.  (Tr. 55).

### B.    Summary of Evidence Before the ALJ[2]

Plaintiff was twenty-five years of age on the date the ALJ's decision was issued.

(Tr. 249).  She completed high school and two years of college.  (Tr. 61, 250).  Plaintiff

had past relevant work as a cashier, child care attendant and front desk clerk.  (Tr. 64).

Plaintiff's medical history is summarized in the ALJ's decision.  According to Plaintiff,

she was first diagnosed with lupus when she was ten years old.  (Tr. 254).  In

September 2001, Plaintiff presented to Dr. Charles Christian, a treating rheumatologist.

(Tr. 192).  At the time, Plaintiff was a student at FCCJ and was working a secretarial job

at the YMCA.  Id.  Dr. Christian noted that Plaintiff's "joint and muscular pain [was] very

---

[2] Because Plaintiff's appeal deals only with claims of error regarding her physical abilities
due to lupus, the Court will limit its discussion to the medical evidence regarding Plaintiff's lupus.

atypical for SLE or other rheumatic syndromes," as much of it was "very transient (comes and goes over short intervals and is not associated with any physical abnormalities)."  Id.  The report stated that Plaintiff's general and musculoskeletal exams were normal except for slight hypermobility of joints.[3]  (Tr. 193).  Dr. Christian's impression was that Plaintiff probably had "very mild SLE."  Id.

Plaintiff presented to Dr. Christian again in April 2002 after delivering her baby in December 2001.  (Tr. 189).  The general and musculoskeletal examinations of Plaintiff were within normal limits except for slight discomfort on full range of motion of all joints and hypesthesia of all digits of left hand.  Id.  Dr. Christian was not certain Plaintiff had lupus.  Indeed, he stated:

> Either the patient has very mild SLE or she doesn't, in which case the positive ANA and chronic symptoms are coincident but unrelated; either way, there is no compelling indication for steroid or immunosuppressive Rx at this time.  Might consider anti-malarial Rx.

Id.

In February 2003, Plaintiff returned to Dr. Christian for a follow-up visit.  She reported her symptoms as: (1) polyarthralgila without definite joint swelling, diffuse swelling of fingers, rings are tight; (2) weakness; (3) headache; (4) mild blurring vision; and (5) numbness in her left hand.  (Tr. 188).  Plaintiff's musculoskeletal examination was negative except for "mild discomfort on extremes of motion of joints."  Id.

---

[3] Dr. Christian noted that Plaintiff's mother also had slight hypermobility of joints and that she tested negative for SLE.  (Tr. 192-93).

On October 29, 2002, Plaintiff was seen by Dr. Timothy J. McCormick for a consultative physical examination.  (Tr. 135-39).  Plaintiff complained of joint pain and headaches.  Dr. McCormick determined Plaintiff had "generalized diffused swelling about the hands and all the fingers bilaterally, that her grip strength was somewhat weak at 5-/5, but that her fine manipulation were normal.  (Tr. 137).  He further stated that repetitive testing did not demonstrate fatigue and that Plaintiff had no limitation in joint range of motion and no joint swelling or tenderness.  Id.  In noting that Plaintiff was currently working in a job that required much typing and keyboard work, Dr. McCormick opined that Plaintiff "probably would need to be in a work activity where she is not as dependent on performing hand type activities."  Id.

On October 29, 2002, non-examining physician, Eric C. Puestow, M.D., completed a Physical Residual Functional Capacity ("RFC") Assessment.  Dr. Puestow determined that Plaintiff was occasionally able to lift up to 20 pounds, frequently able to lift and/or carry up to 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and was limited to no repetitive motion in her upper extremities.  (Tr. 141).  It was also determined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl.  (Tr. 142).  Finally, Plaintiff was to avoid concentrated exposure to extreme cold and vibration.  (Tr. 144).

On March 31, 2003, a second non-examining physician, Donald Warren Morford, M.D., completed a Physical RFC Assessment.  This assessment was virtually identical to the first RFC assessment except that it noted Plaintiff should avoid concentrated

exposure to extreme heat, wetness, humidity and hazards (machinery, heights, etc.), in addition to cold and vibration.  (Tr. 184).

At the hearing on January 13, 2004, Plaintiff testified she had two children under the age of two and she stated that she attended community college for two years but dropped out because she was pregnant with her son.  (Tr. 249-50).  She claimed that she was only three or four credits shy of getting her associates degree and hoped to go back to school to finish up.  Id.  Plaintiff explained that her most serious physical problem currently is her joint pain.  (Tr. 254).  She stated that it was mainly in her arms (primarily her left arm), hands, wrists, legs, ankles and knees.  (Tr. 254-55).  Plaintiff testified that her lupus goes through cycles where she will be in remission and that the remission could last anywhere from a couple of weeks to a couple of years depending on her level of stress.  (Tr. 256).

During the time period for which she claims to be disabled, Plaintiff worked part-time for ADT.  Plaintiff testified she worked for ADT from August 2002 to December 2002.  (Tr. 257).  Plaintiff also testified she was able to stand for about an hour before needing to sit and that she could sit for an hour and a half to two hours before needing a break.  (Tr. 258).  She claimed to be able to lift ten to fifteen pounds.  (Tr. 259).  Plaintiff stated that during the day she mainly took care of her two children.  (Tr. 260).

C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous

-5-

period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not

have any impairment or combination of impairments which significantly limit her physical

or mental ability to do basic work activities, then she does not have a severe impairment

and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent

her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education,

and past work) prevent her from doing other work that exists in the national economy,

then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v.

Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

        In the instant case, the ALJ determined Plaintiff met the nondisability

requirements of the Social Security Act and was insured for benefits up through the date

of the decision.  (Tr. 16, 22).  At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since her alleged onset date, April 15, 2002.  Id.  At steps two

and three, the ALJ held:

                    [t]he medical evidence shows that the claimant has a history
                    of lupus and Dysthmic Disorder, impairments which, when
                    considered in combination are severe within the meaning of
                    the Regulations, but they are not severe enough to meet or

> medically equal one of the impairments listed in Appendix 1,
> Subpart P, Regulations No. 4.

(Tr. 18, 22). In making this determination, the ALJ found Plaintiff's assertions concerning her limitations were not entirely credible.  (Tr. 18, 22).

The ALJ further determined that Plaintiff retained the residual functional capacity to "perform unskilled, light work with the following restrictions: no crawling, crouching, climbing, squatting or kneeling and no requirement for fine fingering only gross manual dexterity."  (Tr. 19, 22).  At step four, the ALJ utilized the testimony of a vocational expert (VE) during the hearing to determine if Plaintiff could perform any of her past relevant work.  (Tr. 265-68).  The VE testified Plaintiff could perform her past relevant work as a nursery school attendant.  (Tr. 267).  The ALJ also asked the VE whether Plaintiff could perform any other jobs existing in the state of Florida and the national economy.  The VE replied that Plaintiff could work as a parking lot attendant (light, unskilled work with 34,000 jobs in the national economy), a counter clerk (light, unskilled work with 2,200 jobs in the national economy) and storage facility clerk (light, unskilled work with 16,250 jobs in the national economy).  (Tr. 268).  Accordingly, at step five, the ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy.  Consequently, Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 21-23).

### D.    Evidence Presented to the Appeals Council

After receiving the ALJ's decision, Plaintiff filed a Request for Review of Hearing Decision/Order.  (Tr. 11).  With it, Plaintiff provided the Appeals Council with new evidence consisting of records from Brooks Rehabilitation dated February 10, 2004

through March 4, 2004 for physical therapy Plaintiff received for back pain and medical

records from Dr. Mirna Barakat dated January 28, 1997 through May 14, 2004.

Plaintiff's current appeal deals with the records from Dr. Barakat.  Included in those

records is a form Lupus (SLE) Residual Functional Capacity Questionnaire completed

by Dr. Barakat, which placed significant restrictions on Plaintiff's ability to work.  (Tr.

229).  The additional records from Dr. Barakat indicate that she saw Plaintiff on five

occasions.[4]  Once in 1997, where Plaintiff was diagnosed with mild SLE and it was

noted that there was "no evidence of major organ involvement" and "no evidence of

active inflammatory arthritis."  (Tr. 242).  Plaintiff was also seen on October 19, 1998,

where she was again noted to have mild SLE and complained of her joints hurting all

the time, feeling very tired during her menstruation, stiffness in her legs when she woke

up in the morning (although she noted that it improved after she took two to three

steps), occasional numbness in the hands (the report notes that previous nerve

conduction studies showed no abnormality) and some nausea after eating.  (Tr. 239).

The report also stated that Plaintiff worked at a party shop and was attending classes at

FCCJ.  (Tr. 239).  The next record showed Plaintiff was seen by Dr. Barakat on

February 10, 2004 and noted that Plaintiff's hands and wrists hurt (she noted sharp pain

in her left wrist); her hands were swollen; she had morning stiffness in her wrist, legs

and back for about an hour; along with a butterfly rash and fever of 99 degrees during

her menstrual cycle.  (Tr. 234).  The report further noted that the medications Plaintiff

---

[4] There are only records from four of the office visits, however, the report from Plaintiff's
October 19, 1998 visit indicates Plaintiff saw Dr. Barakat in June of 1998.  (Tr. 129).  As stated,
there are no records from this visit.

was taking were helping and that Plaintiff's back pain started during her pregnancy.  Id.

Finally, Plaintiff was seen on April 1, 2004 complaining of chest pains, left arm and hand

numbness and a stiff back.  (Tr. 230).  The report mentioned that Plaintiff's headaches

have stopped.  Id.

The Appeals Counsel accepted this additional evidence and considered it,

however, found that the new information did not "provide a basis for changing the

Administrative Law Judge's decision."  (Tr. 5-6).

## III.   ANALYSIS

Plaintiff argues one issue on appeal.  Plaintiff believes the ALJ erred by failing to

provide the VE with a complete hypothetical taking into account the restrictions noted by

Dr. Barakat in the Lupus (SLE) Residual Functional Capacity Questionnaire she

prepared on May 14, 2004.  As the Commissioner correctly notes, that questionnaire

was not presented to the ALJ; rather, it was provided to the Appeals Council.  As such,

the issue before this Court is whether the case should be remanded to the ALJ to

consider the questionnaire prepared by Dr. Barakat or whether the Appeals Council

committed error.

The Eleventh Circuit has determined two instances when it is appropriate for the

district court to consider evidence submitted only to the Appeals Council.  The first

instance is when a case must be remanded pursuant to sentence six of 42 U.S.C. §

405(g) for consideration of newly discovered evidence.  The second is "[w]hen the

Appeals Council refuses to consider new evidence submitted to it and denies review."

Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998), cert. denied, 525 U.S. 1124, 119

S.Ct. 907 (1999) (quoting, <u>Keeton v. Department of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994)).  In such a case, the denial of review "is ... subject to judicial review because it amounts to an error of law." <u>Id.</u> (quoting,  <u>Keeton</u>, 21 F.3d at 1066).  The Court will now determine whether remand under sentence six of 42 U.S.C. §405(g) is appropriate or whether the Appeals Council committed an error of law.

### A.    <u>Sentence Six Remand</u>

A determination of whether remand for consideration of new evidence is appropriate is a <i>de novo</i> proceeding.  <u>Cherry v. Heckler</u>, 760 F.2d 1186, 1194 (11th Cir. 1985); <u>Smith v. Bowen</u>, 792 F.2d 1547, 1550 (11th Cir. 1986); <u>Caulder v. Bowen</u>, 791 F.2d 872, 875 (11th Cir. 1986).  Sentence six of 42 U.S.C. § 405(g) provides, in pertinent part, that "the court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ... "  42 U.S.C. § 405(g).

The Eleventh Circuit has determined that before a remand is warranted based on newly submitted evidence, the claimant must establish that (1) there is new, noncumulative evidence, (2) the evidence is material (i.e. relevant and probative so that there is a reasonable possibility that it would change the administrative result), and (3) there is good cause for the failure to submit the evidence at the administrative level. <u>Falge</u>, 150 F.3d at 1323 (citing <u>Cannon v. Bowen</u>, 858 F.2d 1541 (11th Cir. 1988) and <u>Keeton</u>, 21 F.3d at 1067).

The evidence submitted by Plaintiff to the Appeals Council consists of medical records from Brooks Rehabilitation from February 10, 2004 through March 5, 2004 and medical records from Dr. Mirna Barakat dated January 28, 1997 through May 14, 2004. (Tr. 204-42).  Plaintiff is primarily concerned with the Lupus (SLE) Residual Functional Capacity Questionnaire prepared by Dr. Barakat on May 14, 2004.[5]  (Tr. 225-29).

As to the first factor, the evidence is "new and noncumulative" if it sheds new light on ill-developed issues or raises issues not previously addressed in the record. Porter v. Shalala, 1994 WL 686920 *2 (N.D. Ala.1994); Blake v. Massanari, 2001 WL 530697 *8 (S.D. Ala. 2001) (both cases citing, Cherry, 760 F.2d 1186 and Milano v. Bowen, 809 F.2d 763 (11th Cir. 1987)).  Dr. Barakat's residual functional capacity questionnaire does not raise issues that were previously unaddressed or ill-developed. Indeed, the record before the ALJ contains two Physical Residual Functional Capacity Assessments.  (TR. 140-47, 180-87).  The first RFC assessment was prepared October 29, 2002 and found that Plaintiff was occasionally able to lift up to 20 pounds, frequently able to lift and/or carry up to 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and was limited to no repetitive motion in her upper extremities.  (Tr. 141).  It was also determined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl.  (Tr. 142).  Finally, Plaintiff was to avoid concentrated exposure to extreme cold and vibration.  (Tr. 144).  The second RFC

---

[5]  Indeed Plaintiff does not reference the medical records from Brooks Rehabilitation and the undersigned does not believe those records are necessarily helpful to Plaintiff's claim.

assessment, prepared March 31, 2003, was virtually identical except that it noted

Plaintiff should avoid concentrated exposure to extreme heat, wetness, humidity and

hazards ( machinery, heights, etc.), in addition to cold and vibration.  (Tr. 184).

Accordingly, the issue of Plaintiff's residual functional capacity was well developed and

the undersigned does not find Dr. Barakat's questionnaire noncumulative simply

because it differs from the opinions of the two consulting physicians.  Blake, 2001 WL

530697 *8 (finding that "'[i]ll-developed' does not mean that other doctors, . . ., reached

a different conclusion.").

     As to the second prong, the undersigned also finds Plaintiff has not shown the

new evidence is material.  "To be material, the evidence must be relevant and probative

so that there is a reasonable possibility that it would change the administrative

outcome."  Caulder, 791 F.2d at 877.  While the evidence is certainly relevant in that it

relates to Plaintiff's ability to work and references her lupus, which is the condition

Plaintiff alleges causes her disability; Plaintiff has failed to demonstrate any reasonable

possibility that this new evidence would change the administrative outcome.

     The questionnaire prepared by Dr. Barakat places significant restrictions on

Plaintiff's ability to work.  For example, Dr. Barakat opined that Plaintiff would need to

take breaks every 45 minutes and that said breaks would last an hour during which

Plaintiff would be required to lay down.  (Tr. 227-28).  However, this opinion is not

supported by any of the medical records from Dr. Barakat and seems inconsistent with

Dr. Barakat's opinion on the same questionnaire that Plaintiff could sit for two hours at

one time before needing to get up, etc.  (Tr. 227).  Additionally, this opinion conflicts

-12-

with Plaintiff's testimony during the hearing that she was able to stand for an hour before needing to sit and that she could sit for an hour and a half to two hours before needing to get up and walk around.  (Tr. 258).  Accordingly, the most that can be said about the questionnaire is that it is just another opinion regarding Plaintiff's residual functional capacity, which could be rejected by the ALJ as being unsupported by medical findings, being inconsistent with two other RFC's and being inconsistent with Plaintiff's testimony during the hearing about her ability to sit and stand, her ability to take care of her own children and her ability to work part-time while suffering with lupus.  (Tr. 250, 251, 257, 258, 260).

In sum, the ALJ was provided with ample evidence regarding Plaintiff's RFC and the undersigned finds the ALJ's decision regarding Plaintiff's RFC is supported by substantial evidence.  As such, the Court is convinced there is not a reasonable possibility that Dr. Barakat's questionnaire would change the administrative outcome and remand is not appropriate.[6]

## B.    Whether the Appeals Council Committed Error

According to Falge, the Appeals Council commits error when it refuses to consider new evidence and then denies review.  Falge, 150 F.3d at 1324 (quoting,

---

[6] Even though Plaintiff's Memorandum fails to address, much less satisfy the elements of, remand pursuant to 42 U.S.C. § 405(g), she may not be completely barred from using this new evidence.  As this Court has noted, "evidence acquired after the decision of the administrative law judge issues may be introduced through a renewed application for disability benefits predicated upon deterioration of the claimant's condition since the time of the original hearing." Callahan v. Barnhart, 186 F.Supp.2d 1219, 1230, n.4 (M.D. Fla. 2002) (citing, Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997);Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir. 1987); Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985); Szubak v. Secretary of Health & Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984)).

Keeton, 21 F.3d at 1066).  Accordingly, it is necessary for the plaintiff to show initially

that the Appeals Council refused to consider the new evidence.  Here, Plaintiff implies

that at best, the Appeals Council provided a cursory review of the new evidence.

          To review the Appeals Council's denial of review, courts have to look at the

pertinent evidence to determine if the evidence is new and material; the kind of

evidence the Appeals Council must consider in making its decision whether to review an

ALJ's decision.  Falge, 150 F.3d at 1324 (citing 20 C.F.R. § 404.970(b) ("Appeals

Council shall evaluate the entire record including the new and material evidence

submitted to it if it relates to the period on or before the date of the administrative law

judge hearing decision.") and 20 C.F.R. § 416.1470(b) (same)).  As stated previously,

the Court has determined that the new evidence presented is not material and

therefore, the Appeals Council did not commit error.  Accordingly, the Commissioner's

decision denying Plaintiff benefits is due to be affirmed.

## IV.    CONCLUSION

          For the foregoing reasons, the Clerk of the Court is directed to enter judgment

pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's

decision.  Thereafter, the Clerk is directed to close the file.


          **DONE AND ORDERED** at Jacksonville, Florida, this _8th_ day of September,

2005.

                                                     *Monte C. Richardson*
                                          _____
                                                 MONTE C. RICHARDSON
                                          UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record